UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TOMMY F. BROWN,

        Plaintiff,

v.                                                                  Case No. 1:14-cv-236
                                                                   Hon. Hugh W. Brenneman, Jr.

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____/

## OPINION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for disability insurance benefits (DIB).

Plaintiff was born on May 7, 1966 (AR 187).[1] He alleged a disability onset date of October 17, 2008 (AR 187). Plaintiff completed two years of college (AR 192). He had two previous claims for DIB, which the ALJ addressed as follows:

> Prior to the current application, the claimant filed an application for a period of disability and disability insurance benefits in June 2012. That application was denied in a determination dated August 2, 2012. No appeal was filed.
>
> Prior to the June 2012 application, the claimant filed an application for a period of disability and disability insurance benefits in February 2011. That application was ultimately denied in a decision by an Administrative Law Judge dated September 13, 2011. Although this decision was appealed to the Appeals Council, the claimant's request for review was declined. Therefore, the Administrative Law Judge's decision dated September 13, 2011, is final and binding.

---

[1] Citations to the administrative record will be referenced as (AR "page #").

>Accordingly, this decision address [sic] the period from September 14, 2011, through the date of this decision.

(AR 12).

Plaintiff filed his present claim for DIB on January 13, 2013 (AR 12). He identified his disabling conditions as: mental and emotional impairments; back/neck injury; arthritis; depression; and anxiety (AR 191). The administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on October 18, 2013 (AR 12-24). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in

the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. § 404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity

3

(determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. At the first step, the ALJ found that while plaintiff's alleged disability commenced on September 14, 2011, plaintiff had engaged in substantial gainful activity from June 1, 2012 through October 27, 2012 (AR 12, 15). The ALJ explained that "[a]t the hearing, the claimant stated he had no accommodations related to this job, and he only lost this job because he accidently punctured a drum of chemicals while driving the forklift" (AR 15). However, the ALJ also found that "there has been a continuous 12-month period(s) during which the claimant did not engage in substantial gainful activity" and that "[t]he remaining findings address the period(s) the claimant did not engage in substantial gainful activity" (AR 15). Based on the ALJ's decision, it appears that the relevant time frames are September 14, 2011 through June 1, 2012, and October 27, 2012 through October 18, 2013.[2] In addition, the ALJ found that plaintiff met the insured status requirements of the Social Security Act on March 31, 2016 (AR 14).

At the second step, the ALJ found that plaintiff had the following severe impairments: "status-post left cervical discectomy; chondromalacia patella and patellofemoral pain syndrome bilateral knees; tinea versicolor; bilateral bone spurs in feet; mood disorder, not otherwise specified (NOS); and chronic adjustment disorder [*listed as posttraumatic stress disorder in the September 13,*

---

[2] The Court notes that neither of these identified time frames constitute a "continuous 12-month period(s) during which the claimant did not engage in substantial gainful activity" (AR 15). However, because neither party addressed this particular finding, the Court will not address it.

4

*2011, decision*]" (emphasis in original) (AR 15). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 16).

The ALJ decided at the fourth step:

> [T]hat the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except: occasional stooping, kneeling, crouching, crawling, and climbing stairs; no climbing ladders, ropes, or scaffolds; no operation of leg or foot controls; no rotation of the head or neck in either direction greater than 80 to 90 degrees from a forward looking position; no extremes of temperature and humidity; make no forceful use of non-dominant upper extremity; occasional work above shoulders; no rapid fine manipulation/dexterity of the non-dominant hand; no frequent, sustained interaction with co-workers and public; limited to jobs only requiring the ability to understand, remember, and carry out short, simple instructions.

(AR 18). The ALJ also found that plaintiff was unable to perform any past relevant work (AR 22).

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled, light work in the national economy (AR 23-24). Specifically, plaintiff could perform the following work in the State of Michigan: machine tender (7,800 jobs); line attendant (4,800 jobs); and packager (6,300 jobs) (AR 23-24). Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, at any time from September 14, 2011 (the day after the previous ALJ's decision) through October 18, 2013 (the date of the decision) (AR 24).

### III. ANALYSIS

Plaintiff raised three issues on appeal:

**A. The Commissioner erred at the first half of Step Three by failing to consult a medical expert before determining the claimant's combined impairments did not equal the intent of Listing 1.04A.**

5

Plaintiff contends that the ALJ failed to consult a medical expert before determining the claimant's combined impairments did not equal the intent of Listing 1.04A. At the third step of the sequential evaluation, a claimant bears the burden of demonstrating that he meets or equals a listed impairment. *Evans v. Secretary of Health & Human Services*, 820 F.2d 161, 164 (6th Cir.1987). The "Listing of Impairments" is set forth at 20 C.F.R. § 404, Subpt. P, Appendix 1. The listing "describes, for each of the major body systems, impairments which are considered severe enough to prevent a person from doing any gainful activity." 20 C.F.R. § 404.1525. In order to be considered disabled under the Listing of Impairments, "a claimant must establish that his condition either is permanent, is expected to result in death, or is expected to last at least 12 months, as well as show that his condition meets or equals one of the listed impairments." *Evans*, 820 F.2d at 164. An impairment satisfies the listing only when it manifests the specific findings described in the medical criteria for that particular impairment. 20 C.F.R. § 404.1525(d). A claimant does not satisfy a particular listing unless all of the requirements of the listing are present. *See Hale v. Secretary of Health & Human Services*, 816 F.2d 1078, 1083 (6th Cir.1987). *See, e.g., Thacker v. Social Security Administration*, 93 Fed.Appx. 725, 728 (6th Cir 2004) ("[w]hen a claimant alleges that he meets or equals a listed impairment, he must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency"). If a claimant successfully carries this burden, the Commissioner will find the claimant disabled without considering the claimant's age, education and work experience. 20 C.F.R. § 404.1520(d).

To meet the requirements of Listing 1.04, a claimant must establish the following elements:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
>
> or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

The ALJ found that plaintiff's alleged orthopedic impairments did not meet or equal this Listed impairment:

> The claimant's orthopedic impairments were evaluated under listings 1.02 and 1.04. However, as the claimant retained the ability to both ambulate and perform fine and gross movements effectively, the criteria of listing 1.02 are not met. Likewise, the criteria of listing 1.04 were not met because compromise of a nerve root the spinal cord resulting in limitations related to motor function and/or sensory or reflex loss as required by the listing was not shown.

(AR 16).

Plaintiff contends that the ALJ erred as a matter of law when he failed to consult a medical expert before determining that plaintiff's combined impairments "did not equal the intent of Listing 1.04A." The Court disagrees. "For a claimant to qualify for benefits by showing that his

7

unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* criteria for the one most similar listed impairment." *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990) (emphasis in original). A social security claimant cannot qualify for benefits under the equivalence step by merely "showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Id.* Generally, the opinion of a medical expert is required before a determination of medical equivalence is made. *Retka v. Commissioner of Social Security*, No. 94-2013, 1995 WL 697215 at *2 (6th Cir., Nov 22, 1995) citing 20 C.F.R. § 416.926(b). If the evidence fails to demonstrate the required severity as to even one of the criteria, it would be fatal to plaintiff's claim. *See Hale*, 816 F.2d at 1083; *King*, 742 F.2d at 973. "Even in cases where the claimant has had an impairment which came very close to meeting a listing, this court has refused to disturb the Secretary's finding on medical equivalence." *Retka*, 1995 WL 697215 at *2, *citing Dorton v. Heckler*, 789 F.2d 363, 366 (6th Cir.1986) (per curiam); *Price v. Heckler*, 767 F.2d 281, 284 (6th Cir.1985). In this case, the ALJ found that plaintiff did not meet the requirements of Listing 1.04A (AR 16). The Court will not disturb the ALJ's finding on medical equivalence. Furthermore, plaintiff did not meet his burden to present evidence that he met or equaled a listed impairment at step three. *Evans*, 820 F.2d at 164. Plaintiff neither presened a medical opinion to establish that his conditions are medically equivalent to Listing 1.04A nor addressed medical equivalence of Listing 1.04A at the administrative hearing (AR 28-71). Accordingly, plaintiff's claim of error will be denied.

> **B.** **The Commissioner erred in determining a residual functional capacity which did not take into account all the claimant's severe impairments.**

While plaintiff's stated issue refers to an error in evaluating his residual functional capacity (RFC), his contention is that the ALJ failed to list his alleged impairment of myofasical pain syndrome as a severe impairment at step two of the sequential process. Plaintiff's Brief (docket no. 10 at pp. ID## 1043-45). A "severe impairment" is defined as an impairment or combination of impairments "which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Upon determining that a claimant has one severe impairment the ALJ must continue with the remaining steps in the disability evaluation. *See Maziarz v. Secretary of Health & Human Services*, 837 F.2d 240, 244 (6th Cir. 1987). Once the ALJ determines that a claimant suffers from a severe impairment, the fact that the ALJ failed to classify a separate condition as a severe impairment does not constitute reversible error. *Maziarz*, 837 F.2d at 244. An ALJ can consider such non-severe conditions in determining the claimant's residual functional capacity. *Id.* "The fact that some of [the claimant's] impairments were not deemed to be severe at step two is therefore legally irrelevant." *Anthony v. Astrue*, 266 Fed. Appx. 451, 457 (6th Cir. 2008). Here, the ALJ found that plaintiff suffered from the severe impairments of status-post left cervical discectomy; chondromalacia patella and patellofemoral pain syndrome bilateral knees; tinea versicolor; bilateral bone spurs in feet; mood disorder, not otherwise specified (NOS); and chronic adjustment disorder (AR 15). The ALJ's failure to include plaintiff's alleged myofasical pain syndrome as a severe impairment at step two is legally irrelevant. *Anthony*, 266 Fed. Appx. at 457. Accordingly, plaintiff's claim of error will be denied.

### C. The ALJ's RFC evaluation improperly disregarding the claimant's testimony.

While plaintiff's stated issue refers to an error in evaluating his RFC, his contention is that the ALJ improperly discounted plaintiff's statements about his functional limitations due to

pain and other symptoms and that the ALJ "played doctor." Plaintiff's Brief at p. ID# 1046. An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997). "It [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston*, 245 F.3d at 536, *quoting Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972). The court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The threshold for overturning an ALJ's credibility determination on appeal is so high that in recent years the Sixth Circuit has expressed the opinion that "[t]he ALJ's credibility findings are unchallengeable," *Payne v. Commissioner of Social Security*, 402 Fed. Appx. 109, 113 (6th Cir. 2010), and that "[o]n appeal, we will not disturb a credibility determination made by the ALJ, the finder of fact . . . [w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility." *Sullenger v. Commissioner of Social Security*, 255 Fed. Appx. 988, 995 (6th Cir. 2007). Nevertheless, an ALJ's credibility determinations regarding subjective complaints must be reasonable and supported by substantial evidence. *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 249 (6th Cir. 2007).

The ALJ evaluated plaintiff's credibility in part as follows:

> On his Function Report from February 2013, the claimant reported that such simple actions as standing or sitting made his back hurt. He also indicated he had to prop his feet up if sitting or lying down did not help his pain. Moreover, he did none of the yard work or cooking for the family because of his back pain. The claimant added that his hands shook all the time making it difficult to hold a book. Overall, he offered that his pain severely limited his everyday abilities and he was unable to go shopping, could not walk very far, and even used a cane to ambulate (Ex 5F). He testified his neck problem caused some difficulty when looking "far" over his shoulder, such as when driving his car.

\*     \*     \*

However, despite the severity of symptoms to which he alleges, the fact the claimant successfully managed to complete college coursework, even earning "excellent" grades while doing so, undermine the claimant's credibility in this matter. Furthermore, not only does the claimant plan to obtain a Bachelor's Degree in December 2013, he maintained an active job search throughout the period he alleges disability. It was even noted he worked late into the night tailoring his resume for certain positions (Ex 2F/158). The undersigned commends the claimant's repeated attempts at finding work, but the fact the claimant obtained work but lost it because of a mistake while driving a forklift is unrelated to disability.

\*     \*     \*

Overall, the fact the claimant continuously and successfully completed college courses and will obtain his Bachelor's Degree within months of this decision show the claimant has the ability to perform tasks necessary for completion of a college degree, which undoubtedly requires many of the same skills necessary to perform substantial gainful activity.

(AR 18-19, 21).

In addition, the ALJ found that plaintiff's claim of disabling impairments were inconsistent with the medical record and that "there is no indication the claimant experienced significant changes or deterioration of his conditions since the date of the prior decision" (AR 19). For example:

At a June 2012 medical appointment, the claimant said he had neck pain, but only over the preceding few weeks. Moreover, he admitted to the doctor that his neck pain was "off and on". Furthermore, aside from this rather mild problem, the claimant said he had no other complaints (Ex 1F/98). Such statements and admissions do not support the chronic, severe pain of the neck and elsewhere to which the claimant alleges. Likewise, little support for the allegations is derived from a November 2012 admission by the claimant that he only had pain described as a 2 on a 10point scale (Ex 2F/174 and 4F/45). Subsequently, from March 22, 2013 to June 28, 2013, he did not present to the DVA [Department of Veterans Affairs] for treatment. Thus, the claimant's allegations were repeatedly inconsistent with the medical evidence.

11

(AR 20).³

        Plaintiff's argument regarding the ALJ's credibility determination is hard to follow. Plaintiff relies heavily on the opinion of Dr. Saadat Abassi's from March 9, 2011 (AR 282-90). Plaintiff's Brief at pp. ID## 1027, 1047. However, this opinion is irrelevant, and potentially supports the ALJ's decision, because Dr. Abassi's plaintiff was deemed not disabled at that time (AR 12). The Court finds no compelling reason to disturb the ALJ's credibility determination based upon the inconsistency between plaintiff's claims and the medical record. *See Smith*, 307 F.3d at 379.

        Plaintiff also refers to the following statement as evidence that the ALJ improperly "played doctor" in discounting his credibility:

> Finally, although the claimant had a medical appointment in August 2013, there were few objective findings. The most noteworthy part of the treatment note is not an objective finding or even a subjective statement, rather, it is the fact the claimant was not instructed to return to the clinic for one full year (Ex 4F/33). This indicated the claimant's symptoms were not nearly as severe as alleged as it is reasonable to conclude that the physician would have wanted to meet with the claimant again if the claimant's symptoms [sic] truly severe.

(AR 20). It is well established that the ALJ may not substitute his medical judgment for that of the claimant's physicians. *See Meece v. Barnhart*, 192 Fed. Appx. 456, 465 (6th Cir.2006) ("the ALJ may not substitute his own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence"); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir.1996) ("The Commissioner's determination must be based on testimony and medical

---

³ Plaintiff served in the United States Navy from 1984 through 1986, and from 2006 through 2008 (AR 301).

evidence in the record. And, as this Court has counseled on many occasions, ALJs must not succumb to the temptation to play doctor and make their own independent medical findings").

Here, plaintiff contends that the ALJ erred because he "is not a physician and therefore should not be making assumptions regarding the plaintiff's condition." Plaintiff's Brief at p. ID# 1048. The Court disagrees. It appears to the Court that, based on the doctor's lack of objective findings and instruction that plaintiff did not need to come back for one year, the ALJ inferred that plaintiff did not have a severe, disabling impairment. The Court finds no compelling reason to disturb the ALJ's credibility determination on the ground that he "played doctor." *See Smith*, 307 F.3d at 379. The record reflects that the ALJ articulated contradictions among the medical records, plaintiff's testimony, and other evidence. *See Walters*, 127 F.3d at 531. Accordingly, plaintiff's claim of error will be denied.

### IV. CONCLUSION

The ALJ's determination is supported by substantial evidence. The Commissioner's decision will be **AFFIRMED** pursuant to 42 U.S.C. § 405(g). A judgment consistent with this opinion will be issued forthwith.


Dated: March 27, 2015                            /s/ Hugh W. Brenneman, Jr.
                                                 HUGH W. BRENNEMAN, JR.
                                                 United States Magistrate Judge